IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

| | |
|---|---|
| LORI WIGOD, on behalf of herself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> PNC BANK, N.A., a national banking association, <br><br> Defendant. | Case No: 2:17-cv- 02025 <br><br> **JURY TRIAL DEMANDED** <br><br> Hon. Gary Feinerman |

## SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiff Lori Wigod ("Wigod" or "Plaintiff") brings this Second Amended Class Action Complaint against Defendant PNC Bank, N.A. ("PNC" or "Defendant"), for actual and punitive damages and to enjoin PNC's practice of failing to provide timely notices of adverse action under the Equal Credit Opportunity Act, 15 U.S.C. § 1691, *et seq.* ("ECOA") and its implementing regulation, Regulation B, 12 C.F.R. §1002.9, *et seq.* Plaintiff Wigod, for her Class Action Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## PARTIES

1. Plaintiff Wigod is a natural person and a citizen of the State of Illinois. Wigod resides in Chicago, Illinois. She owns a condominium on which there is a second mortgage that is serviced by PNC Bank, N.A. That second mortgage is the loan at issue in this lawsuit (the "Subject Loan"). At all times relevant, Plaintiff was qualified and eligible to receive a loan modification for the subject loan, a conclusion PNC would have reached had it accurately

calculated Wigod's income.

2. Defendant PNC Bank, N.A. is a national banking association with its principal office located in Delaware. PNC held the servicing rights to Plaintiff's second mortgage—the subject loan at issue in this Complaint—by virtue of its acquisition of National City Bank.

## JURISDICTION AND VENUE

3. Jurisdiction is proper pursuant to 28 U.S.C. § 1331 because, as an action under the ECOA, 15 U.S.C. § 1691 and Regulation B, 12 C.F.R. §1002.9 *et seq.*, this case involves questions of federal law.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) as the unlawful practices are alleged to have been committed in this District, Defendant regularly conducts business in this District, and the named Plaintiff resides in this District. This Court has supplemental subject-matter jurisdiction over the ancillary and pendent state law claim under 28 U.S.C. § 1367.

## NATURE OF THE COMPLAINT

*Under ECOA, Creditors that Decline to Modify Home Loans Must Provide Adverse Action Notices Where a Borrower is Not in Default.*

5. The Equal Credit Opportunity Act 15 U.S.C. § 1691, *et seq.*, which is implemented by Regulation B, 12 C.F.R. §1002.9, applies to all creditors.

6. Under ECOA and Regulation B, creditors must provide notice of adverse actions on an application for credit, including a loan modification submitted by borrowers, within thirty (30) days. Adverse action notices under the ECOA and Regulation B are designed to help consumers and businesses by providing transparency to the credit underwriting process and protecting against potential credit discrimination.

7. Regulation B defines adverse action as[1]:

A refusal to grant credit in substantially the amount or on substantially the terms requested in an application unless the creditor makes a counteroffer (to grant credit in a different amount or on other terms), and the applicant uses or expressly accepts the credit offered:

A termination of an account or an unfavorable change in the terms of an account that does not affect all or substantially all of a class of the creditor's accounts; or

A refusal to increase the amount of credit available to an applicant who has made an application for an increase.

8. A refusal to modify a home loan of a borrower who is not in default on the loan is considered an adverse action under the ECOA.

9. A bank that declines or refuses to modify a borrower's home loan must provide, under ECOA, an adverse action notice.

10. **ECOA adverse action notices ("ECOA Notices") must be sent within 30 days**.

Under Regulation B, § 1002.9 Notifications:

---

[1] To provide greater clarity about the definition, Regulation B also specifically delineates what is not adverse action:

A change in the terms of an account expressly agreed to by an applicant;

Any action or forbearance relating to an account taken in connection with inactivity, default, or delinquency as to that account;

A refusal or failure to authorize an account transaction at point of sale or loan except when the refusal is a termination or an unfavorable change in the terms of an account that does not affect all or substantially all of a class of the creditor's accounts or when the refusal is a denial of an application for an increase in the amount of credit available under the account;

A refusal to extend credit because applicable law prohibits the creditor from extending the credit requested; or

A refusal to extend credit because the creditor does not offer the type of credit or credit plan requested.

(a) Notification of action taken, ECOA notice, and statement of specific reasons -

(1) When notification is required. A creditor shall notify an applicant of action taken within:

(i) 30 days after receiving a completed application concerning the creditor's approval of, counteroffer to, or adverse action on the application;

(ii) 30 days after taking adverse action on an incomplete application, unless notice is provided in accordance with paragraph (c) of this section;

(iii) 30 days after taking adverse action on an existing account; or

(iv) 90 days after notifying the applicant of a counteroffer if the applicant does not expressly accept or use the credit offered.

11. Adverse action notices must also contain an ECOA antidiscrimination notice substantially similar to the one in 12 C.F.R. § 1002.9(b)(1) and the name and address of the creditor's primary regulator.

12. **PNC fails to provide timely adverse action notices.** Despite ECOA's requirement that loan modification applications be responded to within thirty (30) days, PNC serially fails to respond on time. That is, on information and belief, PNC serially fails to consider applications submitted on: (1) Sundays (and perhaps Saturdays as well), (2) banking holidays, (3) other non-business days, or, (4) after normal business hours ("after hours") on days during which the bank is open for business (*e.g.*, completed applications received after 5:00pm, or at such other times the bank closes, on a day the bank is open) as having been received on the actual date of receipt. Instead, PNC systematically considers such applications as not having been submitted until the next business day, or such other date as PNC personnel got around to commencing their review of the completed loan application.

13. By virtue of PNC's systematic administrative failure to start the proverbial clock when the completed application was actually received, PNC routinely submits ECOA Notices

4

several day's late. Among other injuries, such delays cause customers confusion, deny them information Congress indicated they must be provided under statute within time limits proscribed by Congress, and make it more difficult for the homeowner to investigate the supposed reasons provided for the adverse action prior to defaulting and incurring late charges and related penalties and fees.

## FACTS CONCERNING PLAINTIFF WIGOD

14. Wigod has a home equity line of credit ("HELOC") owned by E*Trade Bank. The servicing rights for the HELOC are held by PNC Bank, N.A., which services the loan on behalf of the owner.

15. On August 31, 2016, Plaintiff Wigod sent a completed Uniform Borrower Assistance Form to PNC regarding the HELOC. (*See* "Uniform Borrower Assistance Form," a true and accurate copy of which is attached hereto as Ex. A.)

16. At the time Wigod submitted the Uniform Borrower Assistance Form to PNC, and at all other times relevant until PNC failed to provide a timely ECOA Notice to Wigod, Wigod was not in default on the subject loan. (*See* "Monthly Loan Statements," true and accurate copies of which are attached as Group Ex. B.)

17. On September 6, 2016, PNC sent a letter requesting additional documentation, and Wigod quickly complied by sending in the requested materials.

18. Then again, on October 12, 2016, PNC requested that Wigod send in additional information, including a monthly loan statement for Wigod's first mortgage, held by Ocwen. Wigod sent in all documents, including the monthly loan statement, by fax (to fax #1.866.641.2691) on October 18, 2016.

19. On October 22, 2016, PNC called and requested information and Wigod

5

responded by faxing in the requested documents, which were received that same day in the late afternoon, after the bank was closed. That is the very last day on which Wigod sent in a completed application.

20. Due to a systematic administrative error pursuant to which PNC does not review applications received "after hours" or on Sundays (and potentially Saturdays) and holidays until the next business day, PNC did not begin its review of Wigod's application until October 24, 2016. Thereafter, on November 23, 2016, more than thirty (30) days after providing a completed application back on October 22, 2016, PNC sent Wigod a letter (an ECOA Notice) stating that she was being denied a loan modification based on "Income insufficient to support credit obligations." (*See* "PNC ECOA Notice of Nov. 23, 2016" a true and accurate copy of which is attached hereto as Ex. C.)

21. At the time of this letter, Wigod was still current on her loan and was not otherwise in default.

22. On December 3, 2016, Wigod sent an appeal letter to PNC indicating that "Income insufficient to support credit obligations" failed to inform Wigod as to the inputs used to determine income or credit obligations and asked for additional information.

23. On December 8, 2016, PNC responded that, "As of December 8, 2016, an independent appeal review determined that the information provided in your complete Customer Hardship Assistance Package was correctly evaluated for a loan modification according to PNC Bank, N.A. and your investor-provided guidelines." No information about these mysterious investor guidelines was provided at all.

24. On December 21, 2016, Wigod responded that PNC's letter of December 8, 2016 ignored her prior request, made in her letter of December 3, 2016, for the inputs used to

determine that her income was insufficient to meet her credit obligations.

25. Wigod also pointed out that PNC had referenced "investor-provided guidelines" without providing any information as to the nature of those guidelines.

26. On December 29, 2016, PNC sent Wigod a letter that contained a list demanding that Wigod resubmit all of the documents she had already provided on August 31, 2016 with her initial application.

27. On January 9, 2017, Wigod responded that she did not wish to re-apply for a modification and that she had not yet been provided the inputs requested in her letters of December 3, 2016, and December 21, 2016.

28. On January 11, 2017, PNC sent Wigod an email indicating that it could not provide the information requested in a letter but that "this requires a phone conversation."

29. As memorialized in a letter sent by Wigod on January 30, 2017, PNC's representative, Tracy Jones, had a call with Wigod during which she disclosed only the income numbers used by PNC.

30. Wigod pointed out two errors in PNC's calculations during this call. These errors were never corrected. Indeed, rather than correct the errors, Ms. Jones simply responded that Wigod's appeal was denied.

31. On January 31, 2017, PNC sent Wigod a letter indicating that the bank was unable to provide hardship assistance because Wigod had not provided information requested by the bank.

32. PNC's late and vague notice of denial and decision to not provide Wigod with a loan modification caused Wigod actual damages including causing her to miss payments, incur late fees, and ultimately fall behind on her loan. Wigod was denied notice within the time limits

7

mandated under ECOA and Regulation B and PNC refused to correct errors brought to its attention. This delay caused Wigod to miss a payment on the loan and incur late fees and other charges, and the improper denial of her loan modification application caused her to owe more on her mortgage loan than she otherwise would have owed had PNC corrected its errors as notified.

## CLASS ALLEGATIONS

33. Plaintiff seeks certification of a class under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3):

> (1) All persons in the United States (2) whose first or second mortgage loans were serviced by PNC Bank (3) who, within the 5 years prior to the filing of the initial Complaint in this case to the date notice is sent, (4) submitted a complete loan modification application, (5) while not in default on their loans, and (6) who were sent notices that their loan modifications were being denied 31 or more calendar days after submission of their modification application.

34. The following people are excluded from the Class: any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Classes; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons. Plaintiff anticipates the potential need to amend the Class Definitions following the completion of class discovery regarding the size and scope of the Class, including the extent of any policy or systematic administrative error pursuant to which completed loan modification applications were not considered as having been received for the purposes of starting ECOA's 30-day clock on the date of actual receipt.

35. **Numerosity**: The exact size of the Class is unknown and not available to Plaintiff

at this time, but individual joinder is impracticable. On information and belief, Defendant provided untimely denial letters to hundreds and perhaps even thousands of borrowers. That is, on information and belief Defendant started its clock with respect to its borrowers who submit completed applications on Sundays, holidays, and on other non-business days, or who submit applications "after hours"—i.e., after 5:00pm or whatever other time the bank generally closes on a particular business day—on the first business day that follows. In Wigod's case, her completed application was at the latest submitted on October 22, 2016, after hours on a Saturday. PNC didn't start the clock until the next business day, which was the following Monday, October 24, 2016. On further information and belief, PNC's loan management system has data showing the dates when completed loan modification documents were received from each borrower as well as the dates that PNC sent the borrower ECOA Notice.

36. **Commonality**: There are several questions of law and fact common to the claims of Plaintiff and the Class on which every class member's claim will either succeed or fail, and which will be proven using common evidence. Such common questions for the Class include, without limitation:

(a) Whether Defendant's conduct violated the ECOA;

(b) Whether Defendant systematically failed to provide timely notices of its decision to deny loan modification applications; and

(c) Whether Defendant had a systemic administrative problem or policy under which it failed to start its clock for the purposes of timely responding to completed loan applications of borrowers not in default on the day actually received where the application was received at a time the bank was closed, *i.e.*, "after hours" on banking days, or on Sundays, holidays, or other "non-banking" days; and

(d) Other common questions of law and fact.

37. **Typicality**: Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff submitted her complete application after hours on a Saturday. Plaintiff is a member of the Class, and if it violated the ECOA to send Plaintiff a denial decision 31 or more days after she submitted a complete loan modification application then it violated the ECOA with respect to everyone else.

38. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff.

39. **Policies Generally Applicable to the Class and Rule 23(b)(2) Certification**: This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members, and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as respective wholes, not on facts or law applicable only to Plaintiff. That is, PNC acts as if it is entitled to wait until the next business day after receipt to start its clock running for the purposes of responding to completed loan applications, thereby buying itself several additional day's time to conduct its review.

40. **Predominance:** The common questions of law and fact set forth above predominate over any individual issues. Whether Defendant complied with ECOA or serially

sent late ECOA Notices due to a systematic administrative error goes to the very heart of the case and are issues on which all class members' claims hinge. As such, the common issues predominate over any supposed individualized issues.

41. **Superiority and Manageability**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable. The actual damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

## CAUSES OF ACTION

### COUNT I
### Violation of the Equal Credit Opportunity Act (ECOA) 15 U.S.C. § 1691, *et seq.*
### (On Behalf of Plaintiff Wigod and the Late Notice Class)

42. Plaintiff incorporates all other allegations as if set forth fully herein.

43. Wigod's loan modification application was an application for credit under ECOA.

44. Wigod was current/not in default at the time she applied for the modification.

45. In violation of the ECOA, PNC failed to provide a notice of denial within 30 days

11

of its receipt of Wigod's complete application.

46. Wigod submitted a complete application, at the absolute very latest, by October 18, 2016. Defendant failed to respond until November 23, 2016.

47. PNC's failure to provide timely notice of its decision prevented or interfered with Wigod's ability to promptly review, investigate, and respond to PNC's decision. Wigod was denied notice within the time limits mandated under ECOA and Regulation B and was delayed an opportunity to investigate PNC's basis for the denial and to resolve the dispute before the next payment was due (which should have been modified). This delay caused Wigod to miss a payment on the loan, incur late fees and other charges, and ultimately incur legal fees to correct.

48. PNC routinely and serially fails to respond to complete loan modification applications within 30 days.

49. On information and belief, PNC has a systemic administrative problem and/or policy under which it fails to start the clock for sending ECOA notices on the date a completed application is received (where the application is received "after hours" on a banking day or on a non-banking day like a holiday, Sunday (and potentially Saturdays) or other day when banks are closed) and instead starts the clock on the next business day. To the extent PNC refused to consider Saturdays as a banking day, then anyone who submitted an application on a Saturday would be covered as well. For Wigod, who submitted her application at the latest on a Saturday "after hours," PNC didn't start the clock until the following Monday, October 24, 2016. It is unclear whether PNC would have considered her application as having been received had she faxed it earlier on that Saturday when the bank was ostensibly still "open." Nothing in the ECOA or its implementing Regulation permits PNC to wait until the following business day to start the clock.

50. Borrowers need timely responses so they can investigate the reasons provided and potentially lodge a dispute. It is also needed so that borrowers can research alternative funding options or other loss mitigation solutions and investigate their denial and options more meaningfully. By providing late ECOA notices PNC places its borrowers at a disadvantage Congress specifically enacted legislation to prevent.

51. Under 15 U.S.C. § 1691e, Plaintiff seeks on behalf of herself and the Class any actual damages, punitive in an amount not to exceed $500,000, injunctive relief enjoining PNC from starting its clock (for the purposes of determining the date of receipt for timely sending its ECOA Notices) on the first business day following receipt of a completed loan modification application where the loan is received "after hours" on a banking day or on a holiday or other day PNC considers a "non-banking day" (potentially Sundays and Saturdays included) as opposed to on the date the application is actually received, and declaring PNC's systematic administrative problem in violation of the ECOA, plus costs of suit and reasonable attorneys' fees. Further, Defendant is one of the largest and most sophisticated financial institutions in the world, had access to lawyers who could have readily explained the law to Defendant, and it thus violated ECOA's notices provisions willfully and in conscious disregard of the law.

## COUNT II

### Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act 815 ILCS 505/1
### (On Behalf of Plaintiff Wigod individually)

52. Plaintiff incorporates all other allegations as if set forth fully herein.

53. The Illinois Consumer Fraud and Deceptive Business Practices Act prohibits unlawful conduct as well as unfair, immoral, and unscrupulous business behavior.

54. Here, PNC has acted unlawfully with respect to Wigod by failing to send her a timely ECOA adverse action notice. Instead, and due to its systematic administrative error or

13

policy, PNC waited until the first business day after it received Wigod's completed loan application to start the clock for responding. This delay caused Wigod damages in that it caused her to miss a payment and to otherwise incur an inflated balance, late charges, interest, and other fees. It also delayed her ability to seek alternatives.

55. PNC also acted unfairly, immorally, or in an unscrupulous manner by, *inter alia*:

    a. refusing to inform Wigod of the inputs that PNC had used to calculate her income and eligibility and only providing such figures after repeated persistence;

    b. refusing to correct errors that Wigod's husband pointed out to PNC on the telephone during the appeals process. Indeed, on the very call during which PNC finally relented and notified Wigod of the inputs that PNC had used to calculate her income, Wigod pointed out two errors in the calculations—which PNC wholly ignored (that is, PNC failed to fix the errors or even acknowledge them);

    c. requiring that Wigod reapply instead of considering or correcting the errors that Wigod had brought to PNC's attention;

    d. PNC further referenced mysterious "investor guidelines"—going so far as to represent to Wigod that PNC's review of her loan modification application satisfied such guidelines as a basis for denying her application—while refusing at all times to provide a copy of such supposed "investor guidelines";

    e. by denying Wigod's application for a loan modification even though she qualified and even though PNC's errors were explained to it repeatedly;

    f. refusing to put the calculations performed by PNC in writing, so as to deny Wigod a written record; and

    g. ultimately engaging in a pattern of obfuscation and misdirection such that

14

PNC vested itself with impunity to deny Wigod's loan modification, even though she qualified for a modification under the bank's own criteria, and then refusing to correct its errors when notified.

56.     Such a process is unfair and immoral and unscrupulous. PNC's failures to properly determine loan modification eligibility and concomitant refusal to acknowledge or correct errors when put on notice has caused Wigod to suffer increased late charges, interest, legal fees, and other fees and an overall improperly inflated and increased balance.

57.     As an actual and proximate result Plaintiff has suffered actual damages in amounts to be proven at trial, which include lost time, emotional distress, attorneys fees, interest, late fees, inflated balances and other charges. Plaintiff also seeks punitive damages as allowed. Plaintiff also seeks appropriate injunctive and corresponding declaratory relief to ensure that PNC ceases its unfair and unlawful conduct with respect to the denial of Wigod's loan modification, PNC's repeated errors and refusal to be transparent, and refusal to correct its errors.

*       *       *

## PRAYER FOR RELIEF

Plaintiff Wigod respectfully requests judgment in her favor and against Defendant as follows:

1.      An Order certifying this case as a class action with Plaintiff's counsel as Class Counsel;

2.      An Order entering judgment in Plaintiff and the Class against Defendant in the amount of $500,000 in punitive damages plus actual damages on the ECOA claim;

3.      An Order entering judgment in favor of Plaintiff and against Defendant for actual

15

and compensatory damages in amounts to be proven at trial for Defendant's violations of the ICFA;

    4.    An award of costs and pre and post-judgment interest;

    5.    An award of reasonable attorneys' fees;

    6.    Injunctive relief requiring Defendant to start its clock for considering loan modification applications of borrowers not in default on the day of receipt, as opposed to the first following business day; and

    7.    Such other relief as the Court deems necessary and proper.

                        **LORI WIGOD** individually and on behalf of classes of similarly situated individuals,

Dated: February 28, 2018                    By:  /s/ Steven L. Woodrow
                                                          One of Plaintiff's Attorneys

Steven L. Woodrow
swoodrow@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

Marc E McCallister
McCallister Law Group LLC
120 N. LaSalle Street
Ste 2800
Chicago, IL 60602
312 374 9301
Email: mem@mccallisterlawgroup.com